## (December 23, 1969)

AMERICAN DISTRICT TELEGRAPH COMPANY, Appellant, v. GRINNELL CORPORATION et al., Respondents, et al., Defendants.

APPEAL (1) from an order of Supreme Court at Special Term entered on July 18, 1969, in New York County, which granted a motion by defendants-respondents for partial summary judgment and denied a motion by plaintiff for an order for continuance and for leave to take depositions, and (2) from the judgment entered July 24, 1969 which adjudged that defendants-respondents have judgment against plaintiff on the second cause of action in the amended complaint.

MEMORANDUM BY THE COURT. Judgment and order entered July 24, 1969 and July 18, 1969, respectively, affirmed, with $50 costs and disbursements to the defendants-respondents. The contentions expressed in the dissent which impugn either the purpose or the individuals involved in the transactions, we feel, are completely beside the points involved. The legality of the dividends is not challenged nor is there shown conduct on the part of the directors voting for the dividends which would warrant interference with the internal affairs of the corporation. Absent either, the recriminations expressed have no legal significance and we find it unnecessary to resort to the record to dispel them.

McGIVERN, J. (dissenting). In my opinion Special Term erred in summarily dismissing the second cause of action and in refusing plaintiff's request for a continuance of the motion for summary judgment, pending disclosure proceedings, already scheduled, pursuant to CPLR 3212 (subd. [b]).

The dismissed cause of action seeks the recovery of more than eight million dollars paid in the form of extraordinary dividends by A D T to Grinnell, allegedly as a result of the conspiratorial bad faith of Grinnell and the individual defendants. The charge is that these dividends were high-handedly decreed by Grinnell over the outcries of a captive A D T board, despite the written protestations of the A D T president, and just before A D T was spun off by Grinnell in response to a Federal court order wherein Grinnell was found guilty of the monopolistic acquisition of A D T. (See *United States* v. *Grinnell Corp.*, 236 F. Supp. 244, affd. and remanded, 384 U. S. 563, 576.)

At this stage of the litigation, even allowing for some hyperbole on the part of A D T, we should not peremptorily dismiss these charges, despite the avowals of indignant innocence by Grinnell. The existence of the dual directorates side by side alone is cause for scrutiny and imposes on the dominant party the burden of proving that the impugned actions were fair. "The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness

of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness". (*Geddes* v. *Anaconda Mining Co.*, 254 U. S. 590, 599.) And in that case, the court added: "Especially is this true where a common director is dominating in influence or in character." And in our case, it seems we have such a figure in Grinnell's president, Mr. Fleming, who was viewed with such cautious regard by the Federal court he was characterized as a "vigorous captain" standing on a peak "of lonely eminence," and wherever he "sits is the head of the table." (*United States* v. *Grinnell Corp., supra,* p. 251, 260 WYZANSKI, J.).

And the situation prevailing at the time of the extraordinary dividends constituted an open invitation to the charge, now urged upon us, of self-dealing and conflict of interests, at a time when the two corporations had opposite goals. Since A D T was to continue, it desired to go forward in a robust financial condition. But, according to the second cause of action, Grinnell had a singularly ulterior purpose, to enrich itself by wringing from A D T unreasonable and excessive dividends just before divestiture.

The fact dividends were declared by A D T in 1968 does not dispose of the matter. They are plausibly justified by the directors of A D T as in its best interest and necessary for A D T's public acceptance and marketability of its stock. (See *Diamond* v. *Oreamuno*, 24 N Y 2d 494, 499.) And it is to be noted, the dividends of 1968 were dollar-wise the smallest paid since 1963. On the other hand those declared, allegedly as a result of Grinnell's coercion, in 1966 and 1967, were notably disproportionate to A D T's earnings and prospects in the face of known obligations.

Nor do I agree with Special Term that under the New Jersey statute (N. J. Stat. Ann. 14:8-19) judicial review is of limited scope and an equitable remedy would not lie. Calling the payments dividends payable out of surplus does not make them sacrosanct. The statute is not a license for a plunderbund, if such there be. Even in the principality of New Jersey, I doubt very much if a majority 80% stockholder (Grinnell) could, with ruthless cupidity, and that is the charge, take advantage of its dominant position, and exact extraordinary dividends from a suppliant New Jersey corporation (A D T) without a demonstration of good faith and a show of honest judgment. (See *Hill Dredging Corp.* v. *Risley*, 18 N. J. 501; *Robotham* v. *Prudential Ins. Co.*, 64 N. J. Eq. 673; *Blancard* v. *Blancard & Co.*, 96 N. J. Eq. 264.) Nor is there one word in the statute precluding a victimized New Jersey corporation from pursuing common-law rights of equitable remedies to recover from shareholders (Grinnell) improperly declared dividends.

Thus, we are left with the arch question: Whether in declaring the extraordinary dividends the Grinnell directors on the A D T board acted in good faith and for the best interests of A D T, *or* whether, in a context of alleged conflicts and self-dealing, they acted in bad faith as part of a continuing conspiracy to despoil A D T following the Federal order to divest and relinquish control? The question being open, and "fairly debatable a motion for summary judgment must be denied (*Falk* v. *Goodman*, 7 N Y 2d 87, 91; *Sillman* v. *Twentieth Century-Fox Film Corp.*, 3 N Y 2d 395, 404)." (*Stone* v. *Goodson*, 8 N Y 2d 8, 12-13.) Even the defendant's brief seems to agree with this conclusion, that the question of "bad faith" is not suitable for summary judgment, when it says, "the subjective state of mind of a director * * * probably could never be determined on a motion of summary judgment". (Grinnell brief, p. 30).

Turning now to the aborted examinations before trial, it was Grinnell which moved first, serving upon A D T searching interrogatories, which were answered by A D T exhaustively, and appear in the record, pages 187–235. But, following

an order that 'Grinnell and the individual defendants be examined upon the completion of a single examination of plaintiff, Grinnell, with one counter stroke, procured an ex parte order to show cause containing a stay of the examinations, already scheduled, and returnable at the same time as defendant's motion for summary judgment. I believe it was reversible error to have stayed the scheduled examination and to have summarily dismissed the second cause of action in the face of a welter of grave and unanswered questions.

Serious charges are leveled at Grinnell, and they should not be treated as isolated and apart from the New Jersey statute. Not alone is there the charge of conspiracy and bad faith. There is the specific charge that information was suppressed as to its financial adviser and that misleading data was furnished its special counsel, Dillon, Read and White & Case respectively. If true, these charges impugn the motives and good faith of Grinnell and call into question the discharge of its fiduciary responsibilities to A D T and its minority stockholders. Although Grinnell describes the White & Case letter of November 17, 1967 as not an issue here, it is attached as Exhibit B to Grinnell's affidavits herein and is part of the record before us. And it is significant the White & Case letter contained a caveat to Grinnell: That its directors would act "independently and in the exercise of their best judgment." This alone is a question.

Of the Dillon, Read letter it is gravely charged that this letter was procured in stealth, following a "study" of A D T requested by Grinnell in 1966 as part of a grand design to denude A D T prior to divestiture, and that the "study" was conducted without A D T's knowledge or consent. And most serious of all, that the defendants *know* of the "deficiencies" in the information furnished Dillon, Read.

The alleged bad faith and motive of Grinnell in withholding material information from its advisers are most suitable subjects for pretrial discovery and disclosure as allowed by CPLR 3212 (subd. [f]), in connection with a motion for summary judgment, particularly since A D T claims the events leading up to the dividends are "veiled in secrecy." This I can well believe. Obviously, Grinnell did not board A D T waiving a pirates flag. What was done and intended, for the most part was known only to Grinnell personnel, is to be found in its files, and the courts should not let fall an iron curtain on "facts essential to justify opposition". That is the purpose of CPLR 3212 (subd. [f]) and it should be served. (See 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3212.10.)

Accordingly, I would reverse and deny the motion for summary judgment without prejudice to renewal after the completion of the pretrial procedures, already scheduled, pursuant to CPLR 3212 (subd. [f]).

Tilzer, J. P., Markewich, McNally and Steuer, JJ., concur in Memorandum by the Court; McGivern, J., dissents in opinion.

Judgment and order entered July 24, 1969 and July 18, 1969, affirmed, etc.